STEINER, APPELLEE, *v.* CUSTER ET AL., APPELLANTS.

(Decided December 12, 1939.)

*Messrs. Harrison & Marshman,* for appellee.
*Mr. L. Tate Cromley,* for appellants.

SHERICK, P. J.   Upon trial of this cause, which is an action for damages growing out of an automobile collision, the jury returned a verdict in defendants' favor upon plaintiff's petition, and in favor of plaintiff upon defendants' cross-petition.   A motion for a new trial was made and sustained upon the sole ground of misconduct of certain jurors by their silence and failure to disclose their participation in and connection with prior automobile accidents.   The defendants appealed from this ruling, upon the theory that the order was a final one because the court had grossly abused its discretion.

Upon a hearing in this court on November 1, 1939, this court reversed the order of the trial court, and in a short memorandum found with the defendants, and in part stated:

"We have carefully examined these affidavits and depositions, and from an examination of the record, we find no outside testimony. We are of the opinion that there is nothing in these affidavits or depositions to show that any of the jurors are partial, biased, or prejudiced to the extent that would warrant a removal of any one of the jurors from the panel."

We are now importuned by the appellee to certify this cause to the Supreme Court for review because of a seeming conflict with the judgments of the Eighth and Ninth Appellate Districts in *Cleveland Ry. Co.* v. *Myers,* 50 Ohio App., 224, 197 N. E., 803, and *Kerr* v. *Goodrich Co.,* 22 Ohio Law Abs., 685. We are unable to perceive the parallelism of the three cases. In view of the law, applied as we see it, and the fact that the court of last resort of this state has not specifically spoken and established the rule applicable in such cases, and the further fact that increasing like assaults are now being made upon juries' verdicts, we are disposed to unequivocally set forth our reasons for the reversal entered.

In the *Cleveland Ry. case, supra,* we note, that defendant propounded the question which a juror failed to answer, and concerning which it was held that such failure to answer denied him the substantial right to challenge the juror upon "suspicion of prejudice," as contemplated by Section 11419-52, General Code. The verdict returned was in plaintiff's favor. The same circumstances are true in the *Kerr case, supra.* In the case at issue plaintiff propounded the unanswered inquiry and the verdict was for defendants.

It is stipulated in the record made upon the hearing of the motion for a new trial, which is the only record before us, "that there was a question put to each juror if they or any relative by blood or marriage, had had any accident or any claims been made for injuries or accident"; and that the court had in-

structed the jury that a failure to answer would be construed as an answer in the negative; and that the jurors failed to answer this question.

Upon the hearing on the motion, the depositions of four of the ten jurors who joined in the verdict were offered by plaintiff and received in evidence. This was all of the evidence considered by the judge, who was not the trial judge in the cause.

The juror, Sapp, testified that twelve years prior his car slipped on the ice. No other car was involved. This juror states that as he understood the question it involved the element of damages sustained from a collision with another car.

From the juror, Blackford, it is established that she saw the car in question in this action shortly after the accident, but did not associate it with this case until the pictures of the car were offered in evidence and exhibited to the jury; that she mentioned it to another juror, who told her to forget it. This juror did not know the defendant, Custer. She was a cousin of juror, Staats, and knew that he had been in an accident.

The juror, Staats, testified that he and his wife had been in an accident one to two years prior, and that his wife sustained a serious injury, a fractured pelvis. He was not injured. His expenses were $1,500. He says there was no suit, but that "they made a settlement for the accident." This juror says he understood the question to be, "Have you ever been in an automobile accident that resulted in a law suit?" He also states that once a truck, due to defective mechanism, got out of his control and he was thrown out.

Juror, Leonard, stated that her daughter once lost control of her car. No collision was involved. She had the same understanding of the question as did the juror, Staats.

All of these four jurors testify that the matters related in no way influenced them in arriving at their

verdict. The juror, Staats, offered a further bit of evidence which is illuminating. When asked if the fact of his wife's injury did not influence his judgment, he replied, "It didn't. If there was any chance for that to influence me, it was from the other side."

Analyzing the testimony of the jurors, Sapp and Leonard, it is clear that their accidents were their own personal mishaps, in no way contributed to by any other person. Both had the idea that the question referred to contemplated collisions, damages, claims and suits. How in the world, had they answered in the affirmative, could their answers and a subsequent inquiry have raised a suspicion of prejudice? Sapp had no one to blame, except mother nature for the ice which caused his accident twelve years previously. If this fact were of any importance, as it was not, surely "the failure to disclose these remote facts did not constitute misconduct and resulted in no prejudice to the plaintiff," as was held in *Muskingum Watershed Conservancy District* v. *Funk*, 134 Ohio St., 302, at 306, 16 N. E. (2d), 454. The daughter of the juror, Leonard, had no one to blame except herself or a defect in her car. To our notion, in these two instances, a claim of denial of a right to challenge on suspicion of prejudice, is simply preposterous. The same may be said with respect to the truck accident of juror, Staats.

The fact that the juror, Blackford, saw the wrecked car after the accident, but did not associate it with the trial, until after she was sworn and the case was in progress, and the photographs were offered in evidence, surely is no ground for a charge against her of misconduct. Inquiry by counsel might have disclosed the fact. She was honest in her responses to questions propounded. She states that her view of the car did not influence her judgment. We doubt that she was bound to speak when the pictures disclosed that she had seen the wrecked car. We perceive no

resulting prejudice to plaintiff's case. Rather it is a violent presumption to presume that it influenced her judgment.

With respect to the juror, Staats, we think it sig-- nificant that the one at fault settled for his wife's injury without disputation. This juror's answer to the inquiry, "If his wife's injury did not influence his judgment," is consonant with the only logical conclusion deducible therefrom, as is expressed in *Cleveland Ry. Co.* v. *Myers, supra,* at 227, that, "it may well affect his [a juror's] mental attitude to the prejudice of one claimed to be responsible for personal injuries to another." In the present case plaintiff is the complainant and the defendant was the one claimed by plaintiff to be responsible for the accident. Clearly the situation in the two cases are at odds. But we were and are now asked to indulge in the illogical conclusion that Staats' failure to disclose such an incident engendered a "suspicion of prejudice" against plaintiff for which he might have been challenged. If this court and the court for the Eighth Appellate District, in the excerpt quoted, are right, we are now listening to a claim of one who complains of that which at the time was in his favor and which is now not shown to be prejudicial to him. Can the fact that defendants cross-petitioned, change the picture? We think not, because the jury found in plaintiff's favor thereon; and again plaintiff would have to complain of that which was in his favor, and which is contra to the thought of "suspicion of prejudice."

Before proceeding to state what we believe to be the rule pertinent in such cases, we would preface our comments by quotation from *Kerr* v. *Goodrich Co., supra,* at 688:

"We may state that we are unable to discern how any jury, under the facts shown by the record in this case, could have reached a conclusion other than that reached by the jury in the instant case. However, we

bow in deference to what we understand to be the established rule in this state.''

Here we find a case, tried upon certain facts, in which a reviewing court holds that it could be decided by the jury in no other way. This being true, even if the jury were biased and prejudiced, the issues of fact were rightly determined. Surely the verdict and judgment reflected substantial justice. To have reversed the cause upon ''suspicion of prejudice'' to us seems incongruous and is only sustainable upon the theory that the court ''bow[ed] in deference'' to precedent.

We believe there are four Supreme Court cases which reflect disapproval of the course followed in the two cases with which conflict is claimed. In the early case of *Wilder* v. *State,* 25 Ohio St., 555, a juror failed to disclose upon the court's inquiry, that he had served as a talesman within the next preceding twelve months; which is now (Section 11419-51, General Code), the ninth reason for challenge for cause. It was stated on page 556:

''The mere fact that the defendant was ignorant of this cause of challenge, cannot avail him. * * * It must be observed that the statute does not make the juror incompetent to act as such by reason of the cause of challenge named, nor can it be presumed, from the mere fact that the juror failed to respond to the inquiry by the court, that he was influenced by corrupt motives, or that the defendant did not receive at his hands a fair and impartial trial.''

*Schwindt* v. *Graeff,* 109 Ohio St., 404, at 407, 142 N. E., 736, is a case wherein a juror tossed a coin in order to control his, the necessary deciding, vote. The court in the course of its reasoning says:

''The principle that it is against public policy to permit jurors to impeach their own verdict has been generally with an occasional sporadic departure, followed in all the jurisdictions of which we have knowl-

edge, except in those jurisdictions where the common-law rule has been modified by statute.''

It was therein held that jurors could not impeach their own verdict and that the rule of the common law was sound.

A quotient verdict was the bone of contention in *Lund* v. *Kline,* 133 Ohio St., 317, 13 N. E. (2d), 575. The court on page 319, cleaved to the rule that the jury's verdict could not be so questioned, ''unless foundation for their introduction [affidavits] is first laid by competent evidence *aliunde, i. e.,* by evidence from some other source.''

We quote further from the same case, page 320:

''Misconduct of a jury will not be presumed, but must be affirmatively proved. The law will presume proper conduct on their part. Clear and positive evidence *aliunde* is necessary to overcome this presumption.''

We would again allude to the extract previously noted from the *Conservancy District case, supra.*

In what way have the statutes modified the common-law rule in this state? In the first place it must be observed that Section 11419-52, General Code, which permits challenge on suspicion of prejudice is no more sacrosanct than the ninth provision of Section 11419-51, General Code, which it supplements. Section 11419-51, General Code, recites certain grounds that are positive grounds for challenge for cause. Section 11419-52, General Code, however, adds several other grounds over which a court may exercise its discretion. Surely what was held in *Wilder* v. *State, supra,* is equally apropos of Section 11419-52, General Code, and its construction.

Just what is the declared public policy of this state? Section 11345, General Code, which is of long standing, requires that pleadings be liberally construed ''with a view to substantial justice between the parties.'' And that has been the policy of the state

up to now, which is to effect substantial justice. As a part of the recent act to simplify appellate procedure, Section 11364, General Code, was amended. It carries on that policy and provides in part:

"In every stage of an action, the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed, or affected, by reason of such error or defect."

We recognize that throughout trial certain presumptions of prejudice are indulged, as in the case where a court in its charge instructs a jury both correctly and incorrectly upon an issue, or where it charges upon an issue not in the case. We likewise appreciate that a party may not complain of an error which is in his favor, or of one which he induced, or of one which was permitted to occur and exist because of his lack of diligence. And we are equally cognizant of the parent axiom, that findings, verdicts, judgments and decrees should and will not be disturbed unless the error complained of is prejudicial

If plaintiff's interpretation of Section 11419-52, General Code, be correct, then with show of error, but without any proof other than "suspicion of prejudice," trial courts may arbitrarily overcome jury verdicts and deprive a successful litigant of a substantial right to judgment on the verdict upon presentation of an affidavit of a disgruntled juror who may have signed the verdict, and without any supporting evidence from any other source. It is our notion that had we approved of the order for a new trial, that we would have forged a sword for the vacating of verdicts. The statute was not enacted for that purpose. It is pertinently stated in *Lund* v. *Kline, supra,* page 319:

"The general rule in many jurisdictions in the United States is that the affidavits of jurors will not be admitted to impeach their own verdict. This rule, it has been said, is based on considerations of public

policy, which, if not adhered to, would open a novel and alarming source of litigation, and it would be difficult to say when a suit is terminated; that it would open the door to tamper with jurymen; that it might be the means in the hands of a dissatisfied juror to destroy a verdict at any time after he had assented to it; and that it would render jury trial but a vexatious ceremony."

Having in mind the rule of the common law predicated upon public policy; the evils to be avoided; the reasoning found within the four opinions of our Supreme Court as herein noted; the plain intent of our statutes recently enacted to secure substantial justice; and that Section 11576, General Code, which directs when new trials shall be granted (paragraph 2) for "misconduct of the jury," is restricted by the pronouncements in the *Lund case, supra;* we are of opinion that verdicts of juries should not be arbitrarily set aside and new trials granted; and that before a juror's affidavit may be offered to impeach the verdict, there must be clear and positive evidence *aliunde* to establish that the misconduct complained of was prejudicial to the complaining party. This rule finds favor in West Virginia, Virginia and Texas.

We adhere to our prior conclusion, and find that a branch of the trial court committed a gross abuse of discretion in granting a new trial. The cause is remanded to the court of first instance with instruction to enter a judgment upon the verdict in defendants' favor.

*Judgment accordingly.*

Lemert and Montgomery, JJ., concur.